In the
United States Court of Appeals
For the Seventh Circuit

Nos. 01-2933 & 01-2934

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

WILLIAM A. ANDERSON and BRYAN S. GARRETT,
a/k/a BRIAN SCOTT GARRETT,

Defendants-Appellants.

Appeals from the United States District Court
for the Southern District of Illinois.
No. 00-CR-40013-JPG--J. Phil Gilbert, Judge.

Argued April 11, 2002/1--Decided May 3, 2002


   Before CUDAHY, DIANE P. WOOD, and EVANS,
Circuit Judges.

   EVANS, Circuit Judge.  Bryan Garrett and
William Anderson were convicted of
conspiring (along with Robert Pennington
and Debra Garrett) to manufacture
anddistribute more than 50 grams of
methamphetamine. Garrett was also
convicted of being a felon in possession
of a firearm and two crimes related to
his methamphetamine activities. Anderson
was convicted of carrying a firearm in
relation to a drug trafficking crime.
Both were sentenced to lengthy prison
terms: 432 months for Garrett and 180
months for Anderson.

   Garrett raised three issues on appeal,
two of which (relating to his sentence)
have been formally withdrawn. His third
argument--that the government only proved
"multiple conspiracies" not alleged in
the indictment--has also been raised by
Anderson. We have reviewed the arguments
on both sides of the issue, which was not
raised before the district court, and we
do not find plain error. There was more
than enough evidence to convict Garrett
and Anderson of the charged conspiracy,
regardless of any side agreements either
one may have had with other people.

   So that leaves one remaining issue,

pressed by Anderson, which requires a brief glance at the facts. On June 29, 1999, a car Anderson was driving was pulled over by a Richland County (Illinois) sheriff for a traffic violation. During the stop, the officer found a 9 mm gun, a few grams of methamphetamine, some marijuana, and sundry other drug paraphernalia. Based on this incident, Anderson was charged in state court with unlawful use of a weapon, unlawful possession of a controlled substance (methamphetamine), and "armed violence" under Illinois law./2 William Hoffeditz, a public defender for Richland County, was appointed as Anderson's lawyer.

Other arrests were occurring in Richland County around the time Anderson was pinched. On April 8, 1999, someone named Danny Cockerell was charged with unlawful delivery of a controlled substance (cocaine). According to the information, this charge derived from events occurring on April 1, 1998 (this may be a typo--the year perhaps should have been 1999). On October 27, 1999, the State also charged him with possession of a weapon by a felon (occurring on October 26, 1999). On December 6, 1999, Debra Garrett was charged with unlawful possession of a controlled substance (methamphetamine), based on events occurring on September 5, 1999. On December 16, 1999, Robert Pennington was charged with unlawful criminal drug conspiracy (with Bryan Garrett to manufacture methamphetamine between December 1996 and December 16, 1999) and unlawful possession of a substance with the intent to use it for the manufacture of a controlled substance (occurring on December 3, 1999).

With the benefit of hindsight, we know that all of these state defendants eventually became entangled in this federal prosecution. Debra Garrett and Pennington were indicted for conspiring with Bryan Garrett and Anderson to manufacture and distribute methamphetamine./3 Debra Garrett and Cockerell testified against Anderson at trial.

Anderson seeks advantage from another fact common to this group: they were all represented in state court by attorney Hoffeditz. In the district court, Anderson moved to dismiss his federal

charges based on allegations that, in the state action, he shared confidences with Hoffeditz, who may have passed them on to one of his other clients, who may have shared them while cooperating with the federal authorities, who may have used the information to prosecute Anderson. (For those keeping count, that's three rather big "may haves.")

The legal contours of the right Anderson seeks to vindicate--whether it is based in his Sixth Amendment right to effective assistance of counsel, his Fifth Amendment privilege against self-incrimination, or his Fifth Amendment right to due process--are not totally clear. But the district judge held that Anderson had not stated grounds for dismissing the indictment. Moreover, Anderson was represented in the federal prosecution by a different attorney, so there was no conflict of interest warranting disqualification.

On appeal, the issue is slightly different. Anderson claims that the district judge should have held a hearing to determine whether Hoffeditz had, in fact, breached confidences that made their way to the feds. We will review the district judge's decision not to grant an evidentiary hearing in this case for an abuse of discretion. Cf. United States v. Valona, 834 F.2d 1334, 1340 (7th Cir. 1987) (reviewing decision not to grant a hearing on allegations of pre-indictment delay for an abuse of discretion); United States v. Losing, 539 F.2d 1174, 1178 (8th Cir. 1976) ("[T]he determination of whether a hearing is required is necessarily dependent upon the particular facts which attend a particular request, and the district court is properly left with a certain amount of discretion in this regard.").

Judge Gilbert was well within his discretion to deny a hearing. Anderson's argument has three analytical steps, two of which he has not alleged with sufficient detail, definiteness, or specificity to warrant a hearing. See United States v. Hamm, 786 F.2d 804, 807 (7th Cir. 1986). The first step in Anderson's argument seems clear enough. In an affidavit, Anderson said, "I have discussed my case with Mr. Hoffeditz, answered all questions asked of me by Mr. Hoffeditz, and have conveyed my

confidences with respect to all criminal investigations concerning me to Mr. Hoffeditz." The state charges arose from the June 29, 1999, traffic stop, which also formed the basis for the federal indictment against Anderson for carrying a firearm in relation to a drug trafficking crime. Thus, it seems likely that Anderson told Hoffeditz information that would have been of interest in the federal prosecution. (Of course, it is not clear from the affidavit whether Anderson told Hoffeditz information-- apart from information about the events of June 29, 1999--that would have been relevant to the conspiracy count in the indictment.)

But Anderson stumbles on the second step. He alleges that Hoffeditz may have breached these confidences by passing the information on to Debra Garrett, Cockerell, or Pennington; he does not allege that Hoffeditz breached such confidences. He relies merely on the coincidence of Hoffeditz's client list. In fact, Anderson has not filed a complaint with the Illinois Attorney Registration and Disciplinary Commission against Hoffeditz, although his affidavit states that he has written the clerk of court seeking a new lawyer in state court. Nor is the nature of the "joint" representation suspicious. Anderson was charged with crimes deriving from a discrete incident on a specific day; none of the other defendants were implicated in those charges. At that point, only Cockerell was being represented by Hoffeditz, and his charges arose from facts occurring at least 2 months prior to Anderson's June 29, 1999, traffic stop. Debra Garrett was charged on December 6, 1999, based on events occurring more than 2 months after the traffic stop. Only Pennington was charged with a drug-related conspiracy and then naming only Bryan Garrett as a co-conspirator. Anderson (and for that matter Debra Garrett) was not thrown into the conspiracy mix until federal indictments started raining down. These facts are insufficient to trigger a concern that Hoffeditz, a member (apparently in good standing) of the Illinois bar, was breaching confidences willy-nilly.

Last, even assuming Hoffeditz breached his duty of confidentiality, Anderson has

not identified what information Hoffeditz's clients passed along to the agents or prosecutors in this case that prejudiced him at trial. See United States v. Aulicino, 44 F.3d 1102, 1117 (2d Cir. 1995) (stating that in the absence of government interference with the attorney-client relationship, a hearing on a claimed Sixth Amendment violation is not required unless the defendant identifies specific facts showing the communication of privileged information to the prosecutor and resulting prejudice). Pennington did not testify at Anderson's trial. Debra Garrett and Cockerell testified to events based on personal knowledge. Anderson here has simply failed to identify information presented at trial that he thinks originated in his discussions with Hoffeditz or that he thinks derived from leads provided by those discussions. We were informed by the government at oral argument that the United States Attorney for the Southern District of Illinois has an "open file" policy that provides access to witness proffers. Anderson has not pointed to information elicited during any proffers that he thinks derived from information he told Hoffeditz.

Given these facts, Judge Gilbert did not abuse his discretion by declining to hold a hearing.

AFFIRMED.

FOOTNOTES

/1 Bryan Garrett's appeal is submitted on the briefs and the record, oral argument having been waived.

/2 For a discussion about what "armed violence" can mean, see United States v. Fife, 81 F.3d 62 (7th Cir. 1996).

/3 Pennington was named (with Garrett) in the initial indictment on February 9, 2000. Debra Garrett was named (with Garrett, Pennington, and Anderson) in the first superseding indictment on April 19, 2000. Pennington pled guilty on April 20, 2000; Debra Garrett pled guilty on August 3, 2000. The second superseding indictment, under which Garrett and Anderson were convicted, issued on August 11, 2000.