[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 24, 2009
THOMAS K. KAHN
CLERK

No. 08-13032
Non-Argument Calendar

_____

D. C. Docket No. 07-00154-CR-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOHN W. BEMBRY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(March 24, 2009)

Before BLACK, BARKETT and WILSON, Circuit Judges.

PER CURIAM:

John W. Bembry appeals his convictions and 89-month sentences for:

(1) social security fraud, in violation of 42 U.S.C. § 408(a)(7)(B) (Counts 1 and 3); (2) aggravated identity theft, in violation of 18 U.S.C. § 1028A (Counts 2 and 4); and (3) counterfeit securities of private entities, in violation of 18 U.S.C. § 513(a) (Count 5). Bembry raises five issues on appeal: (1) that the district court erred in denying his motion to suppress evidence found in his hotel room; (2) that the district court erred in finding that a search warrant was secured prior to the search of his hotel room; (3) that the district court erred in upholding Bembry's arrest because the arrest warrant, which was based on an unrelated outstanding arrest warrant for Bembry's failure to appear, was a "pretext" that the police used in order to perform an unconstitutional search of his hotel room; (4) that the district court erred in finding that there was sufficient probable cause to issue a search warrant for his hotel room; and (5) that the district court erred by giving Bembry eight criminal history points for three prior convictions at his sentencing.

I.

Bembry first argues that the district court erred in denying his motion to suppress evidence found in his hotel room because, under Georgia law, an arrest warrant must be physically nearby when an officer arrests the subject of the warrant. He contends that the validity of an arrest is controlled by state law and the arresting officer violated Georgia law by not having a copy of his outstanding

arrest warrant when he arrested him.

At a suppression hearing, Detective Ray Woodberry testified that, after he arrested a woman for using a counterfeit check, she told him that Bembry recruited her to purchase gift cards with his counterfeit checks. She also told him Bembry's location and that his girlfriend had been arrested for using counterfeit checks. As a result, Detective Woodberry looked up Bembry in the computer system, learned that he had an active outstanding arrest warrant for failure to appear, and later went to arrest him, pursuant to his arrest warrant. At the arrest of Bembry in his hotel room, officers searched the room and found blank social security cards, blank birth certificates, numerous checks in various names, computers, check stock, laminating sheets, a laminator, and the results of a computer background search on a man whose identity Bembry had appropriated. Detective Woodberry did not have the arrest warrant in his physical possession at the time he arrested Bembry. After the arrest, Detective Woodberry submitted a warrant affidavit, and the magistrate issued a search warrant at 12:10 p.m. After Detective Woodberry served the search warrant, he signed the warrant's Return of Service, indicating that the search was performed at 12:00 p.m. He testified that the search warrant actually was served at 12:30 p.m. and the time on the Return of Service was a clerical error.

3

We review a district court's denial of a defendant's motion to suppress under a mixed standard of review, reviewing the district court's findings of fact for clear error and the district court's application of law to those facts *de novo*. *United States v. Ramirez*, 476 F.3d 1231, 1235 (11th Cir. 2007). The district court's factual findings are construed in the light most favorable to the prevailing party. *United States v. Smith*, 459 F.3d 1276, 1290 (11th Cir. 2006). Here, the prevailing party was the government.

The Fourth Amendment provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. "An arrest is quintessentially a seizure of the person." *McClish v. Nugent*, 483 F.3d 1231, 1238 (11th Cir. 2007). "[T]he admissibility in federal court of the products of state searches and seizures is controlled by federal law." *United States v. Clay*, 355 F.3d 1281, 1283 (11th Cir. 2004) (per curiam). *See also California v. Greenwood*, 486 U.S. 35, 43, 108 S. Ct. 1625, 1630 (1988) ("We have never intimated . . . that whether or not a search is reasonable within the meaning of the Fourth Amendment depends on the law of the particular State in which the search occurs."). There is no federal requirement that an officer have a warrant in hand or nearby when he is arresting a suspect. Instead, when an officer is arresting a suspect, pursuant to a

warrant, and "the officer does not possess the warrant, the officer must inform the defendant of the warrant's existence and of the offense charged and, at the defendant's request, must show the warrant to the defendant as soon as possible." FED. R. CRIM. P. 4(c)(3)(A).

Here, federal law controls. *See Clay*, 355 F. 3d at 1283. Because the arresting officer arrested Bembry pursuant to a valid arrest warrant, he did not violate federal law when he did not have the warrant in hand or nearby. Thus, the district court properly denied Bembry's motion to suppress on this issue.

## II.

Bembry next argues that a search warrant was not secured prior to the search of his hotel room because the Return of Service said that the warrant was served at 12:00 p.m., but the warrant was executed and signed at 12:10 p.m. He contends that, as a result, the detective performed the search and then subsequently secured a search warrant.

A district court's credibility determinations are given great deference by this Court. *Clay*, 376 F.3d at 1302. Moreover, "defects in the return of a warrant are ministerial in nature and do not invalidate a search." *United States v. Diecidue*, 603 F.2d 553, 562 (5th Cir. 1979)[1].

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October

5

Because we give deference to the district court's determination that the officer's testimony that he made a clerical error was credible, and a clerical error on the Return of Service does not invalidate a search, the district court properly found that the search warrant was obtained prior to the search of Bembry's hotel room.

### III.

Bembry next argues that the arrest warrant for his failure to appear was a "pretext" that the police used in order to perform an unconstitutional search of his hotel room, as they had been investigating him since 2005. Specifically, he contends that the detective knew that probable cause did not exist for searching his hotel room, so he used Bembry's outstanding arrest warrant for failure to appear as a pretext for gaining entry to, and then searching, his hotel room.

"Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *United States v. Jones*, 377 F.3d 1313, 1314 (11th Cir. 2004) (per curiam) (quoting *Whren v. United States*, 517 U.S. 806, 813, 116 S. Ct. 1769, 1774 (1996)). "Instead, an arrest will be upheld if the objective circumstances justify the arrest." *Id.*

Because the objective circumstances showed that the arresting officer

1, 1981.

discovered an active outstanding arrest warrant for Bembry and executed the warrant, while it was still valid, the district court properly found that the arresting officer's subjective intent was irrelevant. Thus, the district court did not commit error in upholding Bembry's arrest based on the objective circumstances.

IV.

Bembry argues that there was not probable cause to issue a search warrant for his hotel room because the items that the detective listed in his affidavit, including a computer, laser printer, and "other items that may be linked to Identity Fraud," did not create probable cause that Bembry was committing a crime. Specifically, he contends that the reference to "other items" was vague and did not raise a suspicion of illegal activity, as required to establish probable cause.

We review the district court's determination that an affidavit establishes probable cause *de novo* and its findings of fact for clear error. *United States v. Jiminez*, 224 F.3d 1243, 1248 (11th Cir. 2000). We give due weight to the inferences that the district court and law enforcement officers drew from the facts. *Id.*

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation. . . ." U.S. Const. amend. IV. In *Illinois v. Gates*, the Supreme Court held that whether an affidavit is sufficient to

7

establish probable cause is subject to a "totality-of-the-circumstances analysis" where the issuing magistrate is to "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." 462 U.S. 213, 238, 103 S. Ct. 2317, 2332 (1983). "An affidavit must provide the magistrate with a substantial basis for determining the existence of probable cause." *Id.* at 239, 103 S. Ct. at 2332. "A magistrate's determination of probable cause should be paid great deference by reviewing courts." *Id.* at 236, 103 S. Ct. at 2331 (quotation and citation omitted). The supporting affidavit "should establish a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity." *United States v. Martin*, 297 F.3d 1308, 1314 (11th Cir. 2002).

Here, because a magistrate could reasonably have found probable cause based on the warrant affidavit, which included Bembry's location, his manufacture of counterfeit checks, and the officer's description of his hotel room, which contained a computer, laser printer, and "other items that may be linked to Identity Fraud and the manufacture of counterfeit checks," as well as the recounting of the interview with a woman who stated that she participated in the Identity Fraud

8

scheme with Bembry, the district court did not err in finding that the warrant affidavit contained sufficient probable cause for the issuance of a search warrant. Accordingly, we affirm the district court's denial of Bembry's motion to suppress.

V.

Lastly, Bembry argues that the district court erred by giving him eight criminal history points because it attributed more than one criminal history point for each of his three prior convictions. Specifically, he contends that "the additional five points were based on facts other than the fact of a 'prior conviction.'" He asserts that, under *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005), only a total of three criminal history points could be given for his three prior convictions. He argues that he had already completed the sentences for his prior convictions, and thus, they could not be used to enhance his sentence in the instant case.

We review a district court's factual findings for clear error and its application of the sentencing guidelines to those facts *de novo*. *United States v. Kinard*, 472 F.3d 1294, 1297 n.3 (11th Cir. 2006) (per curiam). We review *de novo* preserved questions concerning the constitutionality of an enhanced sentence. *United States v. Paz*, 405 F.3d 946, 948 (11th Cir. 2005) (per curiam).

Under U.S.S.G. § 4A1.1(a), three points are to be added for each prior

9

sentence of imprisonment exceeding one year and one month. Under U.S.S.G.

§ 4A1.1(b), two points are to be added for each prior sentence of imprisonment of

at least 60 days not counted in § 4A1.1(a). The guidelines define a "prior

sentence" as "any sentence previously imposed upon adjudication of guilt, whether

by guilty plea, trial, or plea of *nolo contendere*, for conduct not part of the instant

offense." U.S. SENTENCING GUIDELINES MANUAL § 4A1.2(a)(1). The background

commentary to § 4A1.1 states:

> Prior convictions may represent convictions in the federal system,
> fifty state systems, the District of Columbia, territories, and foreign,
> tribal, and military courts. There are jurisdictional variations in
> offense definitions, sentencing structures, and manner of sentence
> pronouncement. To minimize problems with imperfect measures of
> past crime seriousness, *criminal history categories are based on the
> maximum term imposed in previous sentences rather than on other
> measures*, such as whether the conviction was designated a felony or
> misdemeanor.

§ 4A1.1 cmt. background (emphasis added).

In *Almendarez-Torres v. United States*, the Supreme Court held that the

government need not allege in its indictment nor prove beyond a reasonable doubt

that a defendant had prior convictions for a district court to use those convictions

to enhance a sentence. 523 U.S. 224, 226-27, 118 S. Ct. 1219, 1222 (1998).

Further, in *United States v. Shelton*, we held that the decision in *Almendarez-*

10

*Torres* was "left undisturbed by *Apprendi*,[2] *Blakely*,[3] and *Booker*," and that "a district court does not err by relying on prior convictions to enhance a defendant's sentence." 400 F.3d 1325, 1329 (11th Cir. 2005).

Because the guidelines authorize a district court to give more than one criminal history point for certain prior convictions, the district court did not err by giving Bembry eight criminal history points for three prior convictions. Bembry's assertion that only a total of three criminal history points could be given for his three prior convictions under *Booker* is thus without merit.

## CONCLUSION

We find no error by the district court as to any of the issues raised by Bembry on this appeal. Accordingly, we affirm Bembry's convictions and 89-month sentences.

**AFFIRMED.**

---

[2] *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2346 (2000).

[3] *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531 (2004).

11